## THE MARINA.

(*District Court, D. New Jersey.* March 8, 1884.)

1. CONDITIONAL SALE—ATTACHMENT.

An engine was furnished to a steam-lighter under a written contract of sale, by which it was to remain the property of the vendor till paid for. The engine was attached by screws to the vessel. The contract was made in New York, but the lighter afterwards went into New Jersey, where an attempt was made by the creditors of the vessel to attach the engine. *Held,* that the engine remained the property of the vendor, and could not be attached.

2. SAME—NOT A CHATTEL MORTGAGE.

An agreement by which goods delivered to the vendee are to remain the property of the vendor till paid for is a conditional sale, and not a chattel mortgage, within the meaning of the registration acts. In the absense of fraud the vendor's title will prevail over an attachment.

3. CONFLICT OF LAWS—LEX SITUS.

Such is, at all events, the law of New Jersey, (*Cole* v. *Berry*, 13 Vroom, 308;) and property brought into a state becomes subject to its law and policy, which will govern the construction of contracts made elsewhere with regard to the transfer and disposition of the property.

In Admiralty.

*John Griffin, Jr.,* (with whom was *Bedle, Muirheid & McGee,*) for libelants.

*Hyland & Zabriskie,* for petitioner.

NIXON, J. On the twenty-ninth of July, 1880, the Lidgerwood Manufacturing Company furnished to the steam-lighter Marina a double hoisting engine, at the request of her owner, J. A. Cottingham, upon the terms specified in a paper, of which the following is a copy:

"NEW YORK, July 29, 1880.

"*Lidgerwood Man. Co. Machine Ware-rooms, No.* 96 *Liberty street, New York*—GENTS: Please furnish and ship to steam-lighter Marina, to remain as your property until fully paid for by me in cash as below stated, the following: One double hoisting engine, same as provided me for steam-lighter Joseph Hall, at $450. To be paid for as follows: Fifty dollars in equal monthly payments. And unless so paid for, you are authorized to enter and retake the same into your possession, wheresoever she may be found. The same to be held fully insured by me against loss or damage by fire, and to be kept in good order.    J. A. COTTINGHAM, 11 Dey St., New York."

The engine was placed on board the steam-lighter, attached to the deck by screws, and used since that date in her ordinary business of lighterage. In this condition of affairs a number of libels *in rem* were filed, and monitions issued out of this court against the said steamer, her engines, and tackle, in favor of creditors claiming liens for supplies, repairs, labor, etc. The marshal of the district, by virtue of said writs, seized the vessel, her engines, tackle, and apparel, and, by order of the court, has advertised her for sale for the satisfaction of alleged liens amounting to about $7,000. The Lidgerwood Manufacturing Company has demanded of the marshal the surrender of the possession of the hoisting engine, claiming the same as its property.

This has been followed by a petition to the court, and a motion that the marshal be ordered to deliver up to said company the custody of the same before any sale of the vessel and her tackle takes place. There seems to be no dispute about the facts, and the proctors of the respective parties have stipulated, in writing, as follows:

It is admitted that the hoisting engine in question was delivered to Mr. James A. Cottingham by the Lidgerwood Manufacturing Company, under and in accordance with the terms of a paper, a copy of which is hereto annexed, and marked Exhibit A; that $250 has been paid by Cottingham on account of said engine, and that he has made default in the payment of the balance of the sum specified in said paper, according to the terms thereof, and that he had made such default prior to the incurring of the claims herein; that the libelants herein did not know at the time they performed the repairs and labor, and furnished the materials and supplies in question, that the said hoisting engine was claimed to be owned by any company or person, other than the owner or owners of the steam lighter Marina, and that they at such times never inquired, and said Cottingham never told them, who claimed to own said engine; that during all the times referred to in said libels said Cottingham was a resident of Jersey City, New Jersey; that none of the labor, supplies, or materials in question were performed upon or supplied to said hoisting engine itself; that while said repairs were being made, or a portion thereof, the said engine, which prior thereto had been attached to said vessel, was removed, and afterwards replaced thereon and reattached thereto; that the rent usually charged by the Lidgerwood Manufacturing Company for the use of an engine such as this is fifty dollars a month, in a case where they rent one; that said engine is attached to the vessel by $\frac{3}{4}$ or $\frac{7}{8}$ inch wood screws passing through the deck and into the deck-beams of the vessel about four inches.

The paper referred to in the foregoing admission of facts, as marked Exhibit A, is the above-quoted writing addressed to the Lidgerwood Manufacturing Company by Cottingham. The question presented is whether the contract shown in the writing is a conditional sale, which did not pass the ownership until the condition was performed, or whether the title passed by the contract and what was reserved was a mere lien or security for the payment of the price of the engine. If the former, then the engine remains the property of the vendor, and is not subject to seizure by creditors claiming leins against the vessel. If the latter, the reservation is void as contrary to the provisions of the chattel-mortgage act of the state, requiring a record of all chattel-mortgages, and *bona fide* creditors or purchasers without notice may hold it discharged of the claim of the manufacturing company. The question is not without difficulty, which arises chiefly from the conflicting views of the courts as to whether the instruments of writing evidencing the sales of chattels are within the registration laws of the state. This much, however, I think has been settled by the supreme court, that the federal tribunals will follow the decisions of the state courts in determining whether or not the registration act of the particular state includes a conditional sale. *Hart* v. *Barney & Smith Manuf'g. Co.* 7 FED. REP. 552.

Is the instrument of writing under which the transfer of the en-

gine took place a mere conditional sale of the property, liable to be defeated if the purchaser fails to pay the purchase money, or is it "a conveyance intended to operate as a mortgage," which is void as to creditors because not recorded? The contract between the company and the owner of the vessel was executed in New York, and the proctors of the petitioner invoke the application of the usual rule that it must be interpreted, and its validity determined by the laws and judicial decisions of that state. It is undoubtedly the settled doctrine of most, if not all, civilized countries that personal property has no locality, and that it is subject to the law which governs the person of the owner, both with respect to its disposition and transmission. Out of this principle has grown the rule in the construction of contracts that, where they relate to movables, they are construed according to the law of the place where they are made, and not according to the local law where they are attempted to be enforced. But this rule is not without its exceptions. · It is founded in comity, and must yield when the legislation of a state in which the property happens to be has prescribed a different rule. Story, Confl. Laws, § 390. Thus the supreme court in a series of cases (*Green* v. *Van Buskirk*, 5 Wall. 307; S. C. 7. Wall. 139; and *Hervey* v. *Locomotive Works*, 93 U. S. 671) have held that every state has the right to regulate the transfer of property within its limits, and that whoever sends property into it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides, or where the contract was entered into.

The present case comes within the exception to the general rule; and as the controversy has arisen in New Jersey, I must look to the statute and the decisions of the courts of this state, rather than New York, for the construction of the contract. The statute of New Jersey (Rev. 709, § 39) enacts that every mortgage or conveyance intending to operate as a mortgage of goods and chattels, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof be filed in the clerk's office of the county, etc. Supplements to the same have been approved on March 19, 1878, (P. L. 139,) on April 5, 1878, (P. L. 347,) and on March 12, 1880, (P. L. 266,) none of which affect the original act, so far as any questions arise in the present case, except the last recited supplement, which requires a *record* of the mortgage in the place of filing. This statute being in force, the supreme court of New Jersey, in the case of *Cole* v. *Berry*, 13 Vroom, 308, had occasion to construe an instrument of writing substantially similar to the one under consideration. Cole, the plaintiff, being the owner of a Domestic sewing-machine, sold the same to one Gustave Wetzel, and gave him possession. While thus possessed, Berry, the defendant,

one of the constables of the county of Hunterdon, seized and sold it by virtue of a writ of attachment issued against said Wetzel. Cole brought an action of trespass against the constable, and claimed the ownership of the machine under the following written agreement, entered into by Wetzel at the time of the purchase:

"ANNANDALE, June 26, 1876.

"Whereas, the subscriber has this day purchased of Josiah Cole one Domestic sewing-machine for the sum of fifty-five dollars, for which I have given fifteen dollars in cash and my note for forty dollars, payable in installments of five dollars a month, and I have allowed him to take the machine in his possession. Now, it is agreed that the said machine is to be and remain the property of the said Cole, and be subject to his control, until the same is actually paid for in cash. GUSTAVE WETZEL."

The learned judge (DEPUE) who spoke for the whole court, in the course of an able opinion, stated the law in New Jersey in regard to the conditional sale of chattels to be as follows:

"(1) Delivery of possession under a conditional contract of sale, which stipulates that the goods shall remain the property of the vendor until the contract price be paid, will not pass title to the vendee until the condition be performed. (2) A vendor who delivers the possession of a chattel under an executory contract of sale, on condition that the property shall not pass until payment of the contract price, may forfeit his property by conduct which the law regards as fraudulent. But where the case presents no other features than that the vendor has entered into a contract of sale on credit, and has delivered the goods to the vendee upon an agreement that they shall remain the property of the vendor until payment of the purchase money be made, the transaction is not fraudulent *per se*, and the property in the goods will remain in the vendor until payment be made, without being subject to execution at the suit of creditors of the vendee."

This would seem to be decisive in the present case, and the more so as the decision is in accord with the best elementary writers on the subject.

Thus Kent in his Commentaries, vol. 2, p. 497, says:

"When there is a condition precedent attached to a contract of sale and delivery, the property does not vest in the vendee on delivery, until he performs the condition, or the seller waives it; and the right continues in the vendor, even against the creditors of the vendee"

Story, Sales, § 313, says:

"A sale and delivery of goods on condition that the property is not to vest until the purchase money is paid or secured, do not pass the title to the vendee until the condition is performed; and the vendor, in case the condition is not fulfilled, has a right to repossess himself of the goods, both against the vendee and against his creditors; and, also, if guilty of no laches, the vendee may reclaim the goods so sold and delivered, even from one who has purchased them from his vendee in good faith and without notice."

Benjamin, in his work on Sales, in the chapter on the "Sale of Specific Chattels Conditionally," (book 2, c. 3, § 320,) adds to Judge BLACKBURN's two rules, a third rule, as follows:

"Where the buyer is, by the contract, bound to do anything as a condition, either precedent or concurrent, on which the passing of the property de-

pends, the property will not pass until the condition be fulfilled, even though the goods may have been actually delivered into the possession of the buyer."

To the same effect, also, is the opinion of Mr. Justice WASHINGTON, in this circuit, in the case of *Copland* v. *Bosquet*, 4 Wash. C. C. 588, and of Judge SHIPMAN, in the second circuit, in the case of *Bauendahl* v. *Horr*, 7 Blatchf. 548.

It may seem at the first glance that the foregoing view is in conflict with the circuit court of Kentucky in the case of *Hart* v. *Barney & Smith Manuf'g Co.* 7 FED. REP. 543, and with the supreme court of the United States in the cases of *Hervey* v. *Rhode Island Locomotive Works*, 93 U. S. 664, and *Heryford* v. *Davis*, 102 U. S. 235.

It will be found, however, on a more careful examination that these decisions turned upon the statutes and the adjudications of the state courts of the respective states, in regard to their registration laws. In the case first stated, the learned judge, after quoting the Kentucky act, said that he must follow the Kentucky courts, and that their later decisions were all to the effect that agreements that are usually called conditional sales were within the law, and therefore void without registration. In *Hervey* v. *Rhode Island Locomotive Works*, *supra*, the parties to the contract of sale lived respectively in New York and Rhode Island, and it was insisted that it must be interpreted by the laws of the state where the contract was made. But the court held that the property, the ownership of which was in dispute, was in Illinois, and that the courts of that state should be followed in determining the controversy, and that these courts had uniformly decided that the policy of the law in Illinois would not permit the owner of personal chattels to sell them, either absolutely or conditionally, and still continue in the possession of them. In *Heryford* v. *Davis*, *supra*, the court admitted, at least by implication, that the chattel-mortgage act of Missouri allowed conditional sales of personal property, and conceded that if the contract under consideration was found to be of that character the court must give it effect. Mr. Justice STRONG, speaking for a majority of the court, said: "If the contract was only a conditional sale, which did not pass the ownership until the condition should be performed, the property was not subject to levy and sale under execution at the suit of the defendant against the company." But, on examining the terms of the agreement, the court found that it lacked the necessary elements of a conditional sale, but, on the other hand, contained every element of an absolute sale and transmission of ownership. Promissory notes were given for the stipulated price of certain railway cars sold, and these notes were to be paid to the vendor in any contingency. If not paid, the vendor reserved the right to take the property into its own possession, and sell it, but was bound, after retaining the sum remaining due upon the notes, to pay the surplus, if any, to the vendee. In view of these provisions, the court determined (Judge BRADLEY dissenting) that it was the intention of the parties, manifested by the agreement, that the ownership of the

cars should pass at once to the vendee, in consideration of its becoming debtor for the price, and that, notwithstanding the efforts to cover up the real nature of the contract, its substance was the hypothecation of the cars to secure a debt due the vendor for the price of a sale.

It only remains to inquire whether the case exhibits any conduct on the part of the vendor which the law regards as fraudulent. If so, I fail to perceive it. If any exist it was the duty of the petitioner to show it. The engine was delivered over to the lighter, to be used, doubtless, for loading and unloading cargoes; but it was to continue the property of the vendor until fully paid for in cash "in equal monthly payments of fifty dollars." That ownership was not forfeited because the vendee attached the engine to the deck of the vessel by wood screws, in order to its more convenient or more efficient use, whether such attachment was made with the knowledge and consent of the vendor or not. He never performed any act, or made any statement, from which the inference could be drawn that he meant to mislead the public, or individuals, in regard to the ownership.

Let an order be entered directing the marshal, in making sale of the vessel, etc., to except the hoisting engine from the property sold. It is not a case where costs should be allowed.