## MARVIN SAFE COMPANY v. JOSHUA NORTON.

1. By the law of this state, upon a conditional sale of chattels, followed by delivery of possession to the vendee, the reservation of title in the vendor until the contract price is paid is valid as against creditors of, and *bona fide* purchasers from, the vendee, unless the vendor has conferred upon the vendee *indicia* of title beyond mere possession, or has forfeited his rights by conduct which the law regards as fraudulent.

2. By the law of Pennsylvania, the reservation of title in the vendor upon such a conditional sale is valid as between the parties, but is invalid as against creditors of the vendee or *bona fide* purchasers from him.

3. S. purchased of the M. S. Company a safe, on credit, under a contract that the safe was to be the property of the company until the contract price was paid. The purchase was made at the company's office, in Philadelphia, and the safe was delivered there to a carrier to be transported to Hightstown, in this state, where S. resided. Subsequently, S. sold the safe to N., and delivered possession to him. The safe was then at Hightstown, and the sale and delivery to N. were made at that place. N. was a *bona fide* purchaser, and paid his purchase money without knowledge of the contract between S. and the company. In trover by the company against N. for the safe—*Held*,

(1) That the contract of purchase by N. having been made in this state, the legal effect of his contract of purchase and his rights under it were determined by the law of this state.

(2) That N., by his purchase, acquired only such title as his vendor had when the property was brought into this state and became subject to the laws of this state, and that therefore the title in the safe was in the company.

On *certiorari* to Mercer Common Pleas.

On May 1st, 1884, one Samuel N. Schwartz, of Hightstown, Mercer county, New Jersey, went to Philadelphia,. Pennsylvania, and there, in the office of the prosecutors, executed the following instrument:

"May 1st, 1884.

' *Marvin Safe Company :*

' "Please send, as per mark given below, one second-hand safe, for which the undersigned agrees to pay the sum of eighty-four dollars ($84), seven dollars cash, and balance seven dollars per month. Terms cash, delivered on board at Philadelphia or New York, unless otherwise stated in writing. It is agreed that Marvin Safe Company shall not relinquish its title to said safe, but shall remain the sole owners thereof until above sum is fully paid in money. In event of failure to pay any of said instalments or notes, when same shall become due, then all of said instalments or notes remaining unpaid shall immediately become due. The Marvin Safe Com-

pany may, at their option, remove said safe without legal process. It is expressly understood that there are no conditions whatever not stated in this memorandum, and the undersigned agrees to accept and pay for safe in accordance therewith.                                    SAMUEL N. SCHWARTZ.

"Mark—Samuel N. Schwartz, Hightstown, New Jersey.
"Route—New Jersey.
"Not accountable for damages after shipment."

Schwartz paid the first instalment of $7 May 1st, 1884, and the safe was shipped to him the same day. He afterwards paid two instalments, of $7 each, by remittance to Philadelphia by check. Nothing more was paid.

On July 30th, 1884, Schwartz sold and delivered the safe to Norton for $55. Norton paid him the purchase money. He bought and paid for the safe without notice of Schwartz's agreement with the prosecutors. Norton took possession of the safe and removed it to his office. Schwartz is insolvent and has absconded.

The prosecutor brought trover against Norton, and in the court below the defendant recovered judgment, on the ground that the defendant, having bought and paid for the safe *bona fide*, the title to the safe, by the law of Pennsylvania, was transferred to him.

Argued at February Term, 1886, before Justices DEPUE, DIXON and REED.

For the plaintiff in *certiorari*, A. S. Appelget.

*Contra*, S. M. Schanck.

The opinion of the court was delivered by

DEPUE, J. The contract expressed in the written order of May 1st, 1884, signed by Schwartz, is for the sale of the property to him conditionally, the vendor reserving the title,

notwithstanding delivery, until the contract price should be paid. The courts of Pennsylvania make a distinction between the bailment of a chattel, with power in the bailee to become the owner on payment of the price agreed upon, and the sale of a chattel with a stipulation that the title shall not pass to the purchaser until the contract price shall be paid. On this distinction the courts of that state hold that a bailment of chattels, with an option in the bailee to become the owner on payment of the price agreed upon, is valid, and that the right of the bailor to resume possession on nonpayment of the contract price is secure against creditors of the bailee and *bona fide* purchasers from him; but that upon the delivery of personal property to a purchaser under a contract of sale, the reservation of title in the vendor until the contract price is paid is void as against creditors of the purchaser or a *bona fide* purchaser from him. *Clow* v. *Woods*, 5 *S. & R.* 275; *Enlow* v. *Klein*, 79 *Penna. St.* 488; *Haak* v. *Linderman*, 64 *Id.* 499; *Stadfeld* v. *Huntsman*, 92 *Id.* 53; *Brunswick* v. *Hoover*, 95 *Id.* 508; 1 *Benj. on Sales* (*Corbin's ed.*), § 446; 30 *Am. Law Reg.* 224, *note to Lewis* v. *McCabe.*

In the most recent case in the Supreme Court of Pennsylvania Mr. Justice Sterrett said: "A present sale and delivery of personal property to the vendee, coupled with an agreement that the title shall not vest in the latter unless he pays the price agreed upon at the time appointed therefor, and that in default of such payment the vendor may recover possession of the property, is quite different in its effect from a bailment for use, or, as it is sometimes called, a lease of the property, coupled with an agreement whereby the lessee may subsequently become owner of the property upon payment of a price agreed upon. As between the parties to such contracts, both are valid and binding; but as to creditors, the latter is good while the former is invalid." *Forest* v. *Nelson*, 19 *Rep.* 38; 108 *Penna. St.* 481.

The cases cited show that the Pennsylvania courts hold the same doctrine with respect to *bona fide* purchasers as to creditors.

In this state, and in nearly all of our sister states, conditional sales—that is, sales of personal property on credit, with delivery of possession to the purchaser and a stipulation that the title shall remain in the vendor until the contract price is paid—have been held valid, not only against the immediate purchaser, but also against his creditors and *bona fide* purchasers from him, unless the vendor has conferred upon his vendee *indicia* of title beyond mere possession, or has forfeited his right in the property by conduct which the law regards as fraudulent. The cases are cited in *Cole* v. *Berry*, 13 *Vroom* 308; *Midland R. R. Co.* v. *Hitchcock*, 10 *Stew. Eq.* 549, 559; 1 *Benj. on Sales* (*Corbin's ed.*), §§ 437–460; 1 *Smith's Lead. Cas.* (8th ed.) 33–90; 30 *Am. Law Reg.* 224, note to *Lewis* v. *McCabe;* 15 *Am. Law Rev.* 380, tit. " *Conversion by Purchase."* The doctrine of the courts of Pennsylvania is founded upon the doctrine of *Twyne's Case*, 3 *Rep.* 80, and *Edwards* v. *Harbin*, 2 *T. R.* 587, that the possession of chattels under a contract of sale without title is an indelible badge of fraud—a doctrine repudiated quite generally by the courts of this country, and especially in this state. *Runyon* v. *Groshon*, 1 *Beas.* 86 *; Broadway Bank* v. *McElrath*, 2 *Id.* 24; *Miller* ads. *Pancoast*, 5 *Dutcher* 250. The doctrine of the Pennsylvania courts is disapproved by the American editors of Smith's Leading Cases in the note to *Twyne's Case*, 1 *Sm. Lead. Cas.* (8th ed.) 33, 34, and by Mr. Landreth in his note to *Lewis* v. *McCabe*, 30 *Am. Law Reg.* 224; but nevertheless the Supreme Court of that state, in the latest case on the subject—Forest *v.* Nelson, decided February 16th, 1885—has adhered to the doctrine. It must therefore be regarded as the law of Pennsylvania that upon a sale of personal property with delivery of possession to the purchaser, an agreement that title should not pass until the contract price should be paid is valid as between the original parties, but that creditors of the purchaser, or a purchaser from him *bona fide*, by a levy under execution or a *bona fide* purchase, will acquire a better title than the original purchaser had—a title superior to that reserved by his vendor. So far as the law

of Pennsylvania is applicable to the transaction it must deter-
mine the rights of these parties.

The contract of sale between the Marvin Safe Company
and Schwartz was made at the company's office in Philadel-
phia. The contract contemplated performance by the deliv-
ery of the safe in Philadelphia to the carrier for transportation
to Hightstown. When the terms of sale are agreed upon, and
the vendor has done everything that he has to do with the
goods, the contract of sale becomes absolute. *Leonard* v.
*Davis*, 1 *Black* 476 ; 1 *Benj. on Sales*, § 308. Delivery of
the safe to the carrier in pursuance of the contract was de-
livery to Schwartz, and was the execution of the contract of
sale. His title, such as it was, under the terms of the con-
tract was thereupon complete.

The validity, construction and legal effect of a contract may
depend either upon the law of the place where it is made or
of the place where it is to be performed, or, if it relate to
movable property, upon the law of the *situs* of the property,
according to circumstances; but when the place where the
contract is made is also the place of performance and of the
*situs* of the property, the law of that place enters into and
becomes part of the contract, and determines the rights of the
parties to it. *Fredericks* v. *Frazier*, 4 *Zab.* 162 ; *Dacosta* v.
*Davis, Id.* 319 ; *Bulkley* v. *Honold*, 19 *How.* 390 ; *Scudder*
v. *Union National Bank*, 91 *U. S.* 406 ; *Pritchard* v. *Norlon*,
106 *Id.* 124 ; *Morgan* v. *N. O., M. & T. R. R. Co.*, 2 *Woods*
244 ; *Simpson* v. *Fogo*, 9 *Jur.* (*N. S.*) 403 ; *Whart. Confl. of
Law*, §§ 341, 345, 401, 403, 418 ; *Parr* v. *Brady*, 8 *Vroom*
201. The contract between Schwartz and the company hav-
ing been made, and also executed in Pennsylvania by the
delivery of the safe to him, as between him and the com-
pany Schwartz's title will be determined by the law of
Pennsylvania. By the law of that state the condition ex-
pressed in the contract of sale that the safe company should
not relinquish title until the contract price was paid, and that
on the failure to pay any of the instalments of the price the
company might resume possession of the property, was valid

as between Schwartz and the company. By his contract Schwartz obtained possession of the safe and a right to acquire title on payment of the contract price; but until that condition was performed the title was in the company. In this situation of affairs the safe was brought into this state, and the property became subject to our laws.

The contract of Norton, the defendant, with Schwartz for the purchase of the safe was made at Hightstown in this state. The property was then in this state, and the contract of purchase was executed by delivery of possession in this state. The contract of purchase, the domicile of the parties to it, and the *situs* of the subject matter of purchase were all within this state. In every respect the transaction between Norton and Schwartz was a New Jersey transaction. Under these circumstances, by principles of law which are indisputable, the construction and legal effect of the contract of purchase, and the rights of the purchaser under it are determined by the law of this state. By the law of this state Norton, by his purchase, acquired only the title of his vendor—only such title as the vendor had when the property was brought into this state and became subject to our laws.

It is insisted that inasmuch as Norton's purchase, if made in Pennsylvania, would have given him a title superior to that of the safe company, that therefore his purchase here should have that effect, on the theory that the law of Pennsylvania, which subjected the title of the safe company to the rights of a *bona fide* purchaser from Schwartz, was part of the contract between the company and Schwartz. There is no provision in the contract between the safe company and Schwartz that he should have power, under any circumstances, to sell and make title to a purchaser. Schwartz's disposition of the property was not in conformity with his contract, but in violation of it. His contract, as construed by the laws of Pennsylvania, gave him no title which he could lawfully convey. To maintain title against the safe company Norton must build up in himself a better title than Schwartz had. He can

Marvin Safe Co. v. Norton.

accomplish that result only by virtue of the law of the jurisdiction in which he acquired his rights.

The doctrine of the Pennsylvania courts that a reservation of title in the vendor upon a conditional sale is void as against creditors and *bona fide* purchasers, is not a rule affixing a certain construction and legal effect to a contract made in that state. The legal effect of such a contract is conceded to be to leave property in the vendor. The law acts upon the fact of possession by the purchaser under such an arrangement, and makes it an indelible badge of fraud and a forfeiture of the vendor's reserved title as in favor of creditors and *bona fide* purchasers. The doctrine is founded upon considerations of public policy adopted in that state, and applies to the fact of possession and acts of ownership under such a contract, without regard to the place where the contract was made, or its legal effect considered as a contract. In *McCabe* v. *Blymyry*, 9 *Phila. Rep.* 615, the controversy was with respect to the rights of a mortgagee under a chattel mortgage. The mortgage had been made and recorded in Maryland, where the chattel was when the mortgage was given, and by the law of Maryland was valid though the mortgagor retained possession. The chattel was afterwards brought into Pennsylvania, and the Pennsylvania court held that the mortgage, though valid in the state where it was made, would not be enforced by the courts of Pennsylvania as against a creditor or purchaser who had acquired rights in the property after it had been brought to that state ; that the mortgagee, by allowing the mortgagor to retain possession of the property and bring it into Pennsylvania, and exercise notorious acts of ownership, lost his right under the mortgage as against an intervening Pennsylvania creditor or purchaser, on the ground that the contract was in contravention of the law and policy of that state Under substantially the same state of facts this court sustained the title of a mortgagee under a mortgage made in another state, as against a *bona fide* purchaser who had bought the property of the mortgagor in this state, for the reason that the possession of the chattel by the mortgagor was not in con-

travention of the public policy of this state. *Parr* v. *Brady*, 8 *Vroom* 201.

The public policy which has given rise to the doctrine of the Pennsylvania courts is local, and the law which gives effect to it is also local, and has no extra-territorial effect. In the case in hand the safe was removed to this state by Schwartz as soon as he became the purchaser. His possession under the contract has been exclusively in this state. That possession violated no public policy—not the public policy of Pennsylvania, for the possession was not in that state; nor the public policy of this state, for in this state possession under a conditional sale is regarded as lawful, and does not invalidate the vendor's title unless impeached for actual fraud. If the right of a purchaser, under a purchase in this state, to avoid the reserved title in the original vendor on such grounds be conceded, the same right must be extended to creditors buying under a judgment and execution in this state; for, by the law of Pennsylvania, creditors and *bona fide* purchasers are put upon the same footing. Neither on principle nor on considerations of convenience or public policy can such a right be conceded. Under such a condition of the law confusion and uncertainty in the title to property would be introduced, and the transmission of the title to movable property, the *situs* of which is in this state, would depend, not upon our laws, but upon the laws and public policy of sister states or foreign countries. A purchaser of chattels in this state, which his vendor had obtained in New York or in most of our sister states under a contract of conditional sale, would take no title; if obtained under a conditional sale in Pennsylvania, his title would be good; and the same uncertainty would exist in the title of purchasers of property so circumstanced at a sale under judgment and execution.

The title was in the safe company when the property in dispute was removed from the State of Pennsylvania. Whatever might impair that title—the continued possession and exercise of acts of ownership over it by Schwartz and the purchase by Norton—occurred in this state. The legal effect

:and consequences of those acts must be adjudged by the law ·of this state. By the law of this state it was not illegal nor ·contrary to public policy for the company to leave Schwartz in possession as ostensible owner, and no forfeiture of the company's title could result therefrom. By the law of this state Norton, by his purchase, acquired only such title as Schwartz had under his contract with the company. Nothing has oc-·curred which by our law will give him a better title.

The judgment should be reversed.