MONITOR DRILL CO. v. MERCER et al.

(Circuit Court of Appeals, Eighth Circuit. August 21, 1908.)

No. 2,828.

1. SALES—CONTRACT—ABSOLUTE OR CONDITIONAL SALE.

A contract of sale of personal property, which fixes the price and obligates the purchaser to pay the same, but expressly provides that title shall remain in the seller until such payment, except as to such as is resold, the proceeds of which shall at once become the property of the seller, is one of conditional, and not of absolute, sale; and its character is not changed by a provision that in case of default the seller may retake possession of all the property unsold and the proceeds of that sold, and that the latter shall be reduced to cash and applied on the purchaser's indebtedness; any surplus being paid to the purchaser.

2. SAME.

The taking of notes and collateral security for the purchase price of property sold under a contract of conditional sale does not affect such feature of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1413.]

3. SAME—PROPERTY HELD UNDER CONDITIONAL SALE—RECLAMATION BY SELLER.

Property held by a bankrupt in Minnesota under a contract of conditional sale, although unrecorded, may be reclaimed by the seller; the failure to record rendering the contract voidable under the state statute only as against lien creditors.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1353.]

Appeal from the District Court of the United States for District of Minnesota.

George S. Grimes (George W. Buffington, on the brief), for appellant.

N. H. Chase (M. H. Boutelle, on the brief), for appellees.

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. This is an appeal from a judgment of the District Court, affirming the order and findings of the referee in bankruptcy. By the facts as shown it appears that the Western Implement Company, a corporation, and the Monitor Drill Company, a corporation, in January, 1906, entered into two certain contracts, by the terms of which the Monitor Drill Company, designated the first party, agreed to sell to the Western Implement Company, designated the second party, certain agricultural implements at certain prices, to be delivered f. o. b. at its factory in St. Louis Park, Minn. Provisions in each of said contracts, appearing in the following order, and the only ones necessary to be considered for the proper determination of the case, were as follows:

"Terms: Party of the second part agrees to settle with party of the first part for all goods purchased under this contract, on or before June 1, 1906, as follows: * * *

"Fourth. Settlement for each and all machines sold by party of second part shall be made at or before delivery, either by cash or the purchaser's note, secured by chattel mortgage covering the property sold, and other personal property of equal value, if possible, which notes and chattel mortgages shall be taken upon blanks to be furnished party of the second party by party of the first part, and at said settlement time party of the second part shall pay to party of first part the proceeds of such sales made for cash in cash, and shall be entitled to the discount above mentioned therefor, and party of second part shall at said settlement time turn over and deliver to party of first part each and all said notes and chattel mortgages securing the same, taken in settlement for machines sold by party of second part as collateral security to the note of party of second part, and party of second part shall also, at said settlement time, give party of first part a special conditional sale agreement, covering unsold machines at each of its local places of business. * * *

"Conditions. It is specifically understood and agreed that the title to each, every, any, and all machines and parts thereof, delivered to party of the second part under the terms of this contract, is in and shall continue to remain in the party of the first until it shall receive full payment in cash therefor; that if party of second part resells any of said machines, or parts thereof, then the full proceeds thereof, be such proceeds book accounts, notes, or cash, or other personal or real property, shall, in lieu of such machines or parts thereof so sold, immediately be, become, and remain the sole and exclusive property of party of the first part until the full indebtedness of party of second part to party of first part is paid in cash. And until such indebtedness of party of the second part shall be paid in full to party of the first part, and until said proceeds and the whole thereof have been actually delivered to party of the first part, the possession and control thereof by party of the second part shall be that of a trustee for the use and benefit of the party of the first part, and not otherwise. * * *

"Default. If party of second part fails, refuses, or neglects to make due and prompt settlement, or performs or permits a breach of this contract in any respect, or if party of first part receives information concerning party of second part derogatory to his credit, financial standing, or reputation, and upon the termination of this contract, through the lapse of time or otherwise, party of the first part may demand and shall be entitled to receive forthwith from party of second part the possession of all machines and parts thereof, and extras and repairs, and all proceeds, of whatsoever nature, or kind, from the resale by party of second part of any machines or parts thereof by him received under this contract, without reimbursing party of the second part for any claim for storage, handling, freight, express, insurance, or any other charge, of whatsoever nature or kind. Party of first part in such case shall reduce such proceeds to cash and apply the same, after deducting actual expenses in so doing, to the payment of the indebtedness due it from the party of the second part, and shall deliver the surplus, if any, to party of the second part."

Subsequently, in August, 1906, the parties had a settlement, required by the terms of the contracts. The books of the parties agreed, and showed that the first party had delivered to second party, under the contracts, goods to the value of $15,653.07. At said settlement second party paid first party $2,048.92 in cash, being the cash received from the sale of goods. At the same time second party executed to first party four promissory notes—one for $4,787.15, one for $2,-456 (which notes represented goods sold by second party on credit), one note for $3,500, and one note for $2,861; said last two notes representing the value of goods on hand and unsold by second party. At the time of said settlement second party gave to first party, as collateral security for the two notes representing goods sold on credit by second party, notes and mortgages aggregating the sum of $5,322.-84, of which amount $3,308.84 were notes and securities of second party which were not taken and received by it for goods so sold. In October following proceedings in involuntary bankruptcy were instituted against said Western Implement Company, and in December following it was duly adjudged a bankrupt, and defendants duly appointed trustees. The trustees took possession of the goods unsold, and the Monitor Drill Company demanded the delivery of said goods to it by the trustees. Being refused, it filed its petition with the referee in bankruptcy for an order upon the trustees to deliver the portion of the goods which it had delivered to the bankrupt under the provisions of said contracts, and which remained unsold. A hearing was had, the referee held said contracts evidenced not conditional, but absolute, sales, the interest of petitioner being that of an equitable mortgagee, that as mortgages they were void under the laws of Minnesota, and denied the prayer of the petition. An appeal was taken to the District Court, where the decision of the referee was affirmed. From the judgment of the District Court this appeal has been prosecuted.

The principal question involved is whether said contracts constituted an absolute sale by the Monitor Drill Company to the Western Implement Company of the property in question, or whether said contracts evidenced a conditional sale only of the property. The chief features of the case were disposed of by this court in the case of Dunlop v. Mercer, 156 Fed. 545, where it was held that a contract nearly similar in its terms, entered into by the bankrupt with the Waterbury-Zimmer Implement Company, evidenced a conditional sale. In that case it was said:

"The agreement has every element of a conditional sale—a vendor, a vendee, agreed prices, an obligation of vendee to pay them, an obligation of vendor that upon condition that the vendee pays the agreed price, but not otherwise, the title of the vendor shall vest in the purchaser. Thus it evidenced a sale in which the vesting of the title in the vendee was made subject to a condition precedent, and it became a contract of conditional sale."

So in this case there was a vendor, a vendee, agreed prices, obligation on the part of the defendant to pay them, obligation of the vendor that, upon condition that the vendee paid the agreed price, but not otherwise, the title of the vendor should vest in the purchaser. It is said on the part of counsel for the trustees that, if the provi-

163 F.—60

sion in the contracts in question above quoted under the title "Default" were eliminated, the contracts might, under the decision of this court, constitute conditional sales. It is claimed, however, on the part of the trustee, that such provision in the contracts qualifies the other provision quoted under the head "Conditions," so that by construing the two provisions together the contracts were not of conditional sale only, but constituted an absolute sale, giving to the vendor only an equitable lien. The portion of the contract above quoted under the heading "Conditions" is clear, specific, and unambiguous to the effect that the title to the property shall remain in vendor until fully paid for, and evidences clearly a contract of conditional sale only. The portion of the contracts quoted under the heading "Default," which authorizes the vendor under certain conditions to retake possession of the unsold portion of the property, in no way qualifies the conditional sale feature of the contract. The taking of the notes for the purchase price, and the taking of collateral security, did not in any way qualify the conditional sale features of the contracts. This was expressly held in Bierce v. Hutchings, 205 U. S. 340, 27 Sup. Ct. 524, 51 L. Ed. 828.

The provision authorizing the vendor to take possession of proceeds of whatever nature derived from the sale of the portion of said property sold by said party of the second part, and reduce such proceeds to cash, and apply the same, after deducting the expenses of so doing, to the indebtedness due from the party of the second part, and deliver the surplus, if any, to second party, does not qualify in any respect the title to the portion of such property remaining unsold. This is fully established in Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, and Bierce v. Hutchings, supra. If the taking of such collateral security did not destroy or qualify the conditional sale feature of the contracts, as was said in the last-cited case, then we fail to perceive how the converting into cash of the securities obtained upon sales and applying the same upon the notes of second party would have such effect.

It is to be borne in mind that the contracts before us do not provide that the portion of the property remaining unsold, if retaken by the party of the first part, shall be sold and the proceeds applied upon the notes given by the second party. There is no provision in the contracts requiring the first party to make a sale or other disposal of the portion of the property remaining unsold which it should retake. But it is urged that the effect of the settlement in August was a novation of contract. Such contention has no force, as it was provided in the contract that a settlement should be had and notes given as was done. It would only be natural for the parties, even when the sale was conditional, to provide that at the close of the sale season a settlement should be made and an account taken to determine what portion of the goods had been sold by second party and an adjustment made with respect thereto.

It is true this settlement was not made on or before June 1st, as stipulated in the contracts, but was made August 25th following, and that at such settlement a special conditional sale agreement, covering

unsold machines, was not given as stipulated; but in view of the clear, specific, and unambiguous terms of the provision headed "Conditions," we think neither of these matters operated to take from the original contract the characteristics of a conditional sale, so clearly stamped upon it by that provision. Parties may modify parts of a contract without affecting the remainder.

It was alleged in the answer of the trustees that they were informed and believed that at the time said contracts were executed it was understood and agreed by the parties thereto that the same should have no force and effect except in the event of the financial embarrassment, insolvency, or bankruptcy of second party, in which latter event it was understood and agreed that the first party (petitioner) should claim said merchandise, or the proceeds thereof, under the purported claim of title evidenced by said agreements. Of this contention that the contracts were tainted with fraud, no allusion has been made in the briefs, and we would be warranted in concluding that the same was abandoned; but we have carefully examined the evidence and record, and think the contention not tenable. The contracts being conditional sales, the failure to properly acknowledge and record them is not fatal, because the state recording statutes render such agreements voidable only against creditors who have a lien on the property, and here no creditor had a lien prior to the bankruptcy proceedings

It follows that the decree of the District Court must be reversed, with directions to set aside the order of the referee and to direct the trustees to surrender to the Monitor Drill Company the property in question.