UNITED STATES FIDELITY & GUARANTY CO. *et al. v.* NORTH-WEST ENGINEERING CO.*

WATSON *et al. v.* SAME.

(Division B.   March 28, 1927.  Suggestion of Error Overruled.  May 16, 1927.)

[111 So. 846.  Nos. 26331, 26332.]

1. SALES.  *Reservation of title in unrecorded conditional sale contract, made in state requiring recording, held good against attachment in state not requiring recording.*

    Where property was sold on conditional sale in Wisconsin for immediate shipment to Mississippi, though the contract was not recorded as required by laws of Wisconsin, the reservation of title was good as against attachment without notice in Mississippi, the laws of which do not require such contract to be recorded, ¹and this though the contract stipulated that the rights of the parties thereto were to be governed by the laws of Wisconsin.

2. SALES.  *Reservation of title held not rendered inoperative as conditional sale by taking additional security.*

    Seller of personal property with reservation of title by taking additional security for price, such as mortgage, either on that or other property, *held* not to make reservation of title inoperative as conditional sale.

---

*Corpus Juris-Cyc. References: Conflict of Laws, 12CJ, p. 451, n. 83 New; Sales, 35Cyc, p. 675, n. 78; p. 682, n. 16; p. 686, n. 33, 34, 35. On effect of taking collateral security upon conditional sale, see annotation in 20 L. R. A. (N. S.) 1065; 33 L. R. A. (N. S.) 492; 24 R. C. L. 506.

APPEAL from circuit court of Coahoma county.
HON. W. A. ALCORN, JR., Judge.

Claimant issues, between the Northwest Engineering Company, as claimant, and the United States Fidelity & Guaranty Company and others and H. W. Watson and others, as execution creditors, were consolidated, and judgment rendered therein for claimant, from which the other parties appeal. Affirmed.

*Robertson, Yerger & Cook,* for appellants.

I. The rights of the appellee to the property in controversy are to be determined by the laws of the state of Wisconsin; and under the laws of the state of Wisconsin, the conditional sales contract reserving title to the property in controversy is void as to appellant for the reason that it was not filed for record in accordance with the Wisconsin statutes, and, therefore, appellant has a superior right to the property of the appellee.

Appellant occupies the position of a *bona-fire* encumbrancer for value inasmuch as the lien acquired by the levy of the attachment came into existence before appellant had any knowledge or notice of any of the rights of appellee to the dredging machine. The lien of the attachment relates back to the levy by the sheriff. *Redus* v. *Warford,* 4 S. & M. 579; *Gray* v. *Perkins,* 12 S. & M. 622; *Saunders* v. *Columbus Ins. Co.,* 43 Miss. 583; Section 2291, Hemingway's Code, and cases cited thereunder.

This being true, the question is presented as to whether or not the rights of the appellee under its conditional-sales contract are superior to those of an attaching creditor, who is, under our laws, a *bona-fide* encumbrancer for value, and who has no notice of the rights of the appellee.

We submit that the rights of the appellee spring out of the contract upon which it bases its right to a recovery in this suit. It will be observed by the court that this contract was executed in the state of Wisconsin and was fully performed in that state. In either of

such cases, under the decisions of Mississippi, the laws of the state of Wisconsin would govern. *Ivey* v. *Leland,* 42 Miss. 444; *Partee* v. *Sullivan,* 44 Miss. 272; *Allen* v. *Bretton,* 47 Miss. 199; *McKee* v. *Jones,* 67 Miss. 405; *Hart* v. *Livermore,* 72 Miss. 809.; *Aetna Ins. Co.* v. *Mount,* 45 So. 835.

All of the above cases hold that the law of the state in which a contract is to be performed governs the rights of the parties thereto. Where the place of performance differs from the law of the. place of making the contract, the law of the performance generally governs in Mississippi. *Martin* v. *Martin,* 1 S. & M. 176; *Emanuel* v. *White,* 34 Miss. 56; *Kauffman* v. *Bank of Kentucky,* 41 Miss. 212; *Harrison* v. *Pike,* 48 Miss. 46; *Lienkauf Co.* v. *Haney,* 46 So. 625.

So much for the general rules with reference to the question of what law determines the rights of the parties to this contract. It is to be observed that the contract was made and executed and performed in Wisconsin. In the case at bar, however, the question of what law shall govern the rights of the parties is not open to conjecture or argumentation. The parties themselves fixed the law that should govern the contract under consideration and distinctly stipulated and agreed that such contract should be a Wisconsin contract.

Parties have the right by contract to agree as to the law of what state shall govern their rights arising under their contract, provided that the law to be enforced in the forum would not be contrary to public policy of the state of the forum, or contrary to public morals. 5 R. C. L., page 938; 12 C. J., page 451.

This being true, it is a proper subject of inquiry as to what are the rights of this appellee under the laws of the state of Wisconsin. See section 5, chapter 122, Uniform Conditional Sales Act, Wisconsin Statutes of 1925.

Appellee failed to comply with this plain, simple provision of the state of Wisconsin as to recordation. *Harrison* v. *Broadway Motor Co.,* 128 Miss. 766, 91 So. 453,

is really controlling of the question presented herein in favor of the appellee. The *Matter of C. P. Cogle, Bankrupt,* 2 Am. Bank. Rep. (N. S.) 848, is somewhat analogous to the case at bar.

II.   The appellee, by the taking of the chattel mortgage, with power of sale, waived any title it might have to the property in controversy under the provisions of the conditional sales contract and, therefore, the reservation of title contained therein is not available to appellee in this controversy.

The appellee in the contract of sale provided that upon the delivery of the property in question a chattel mortgage would be excuted by A. V. Wills & Sons for its benefit.   This was done and constituted a complete novation of any security that it might have theretofore retained.   It is perfectly apparent that it is impossible for one to give a valid chattel mortgage upon property to which he has not title and, therefore, the appellee by contracting for and receiving such chattel mortgage impliedly if not expressly, contracted that the title to the property in controversy passed to A. V. Wills & Sons and they accepted and received the chattel mortgage as the security for the balance of their purchase price.   Reserving a title and accepting a chattel mortgage on the same title from a third party is an impossible situation in law.   35 Cyc. 675; *Aultman* v. *Silha,* 85 Wisc. 359, 55 N. W. 711.

This court will not give its consent to the proposition that the appellee can reserve to itself some of the benefits that might accrue to it by the laws of the state of Wisconsin and cast from itself all the burdens that might be imposed upon it by the laws of that state.

*Maynard, FitzGerald & Venable,* for appellee.

I.   The only real question involved is whether or not the laws governing the title to the property levied upon

were the laws of the state of Mississippi, where the property was situated when levied upon, or the laws of the state of Wisconsin where the title was retained. This seems to us to be an effort on the part of the appellant to have the court reverse its own decision in the case of *Harrison* v. *Broadway Motor Co.,* 128 Miss. 766, 91 So. 453.

We can file no better brief in this court than to refer in its entirety to section 130, pages 300-02, inclusive, of Judge Minor's "Conflict of Laws" which with nicety and exactness sets forth the exact claim made by the appellee in the court below and in this court. See, also, *Hervey* v. *Locomotive Works,* 93 U. S. 664; *Marvin Safe Co.* v. *Norton,* 48 N. J. L. 412, 57 Am. Rep. 566, 7 Atl. 418; *Weinstein* v. *Freyer,* 93 Ala. 257, 9 So. 285; *Public Parks Amusement Co.* v. *Carriage Co.,* 64 Ark. 29, 40 S. W. 582; *The Marina,* 19 Fed. 760.

It is absolutely necessary with regard to the laws of recordation of instruments that the laws of the place where the property is situated when sold or levied upon must be the laws to govern the transaction of the sale or levy. This is evidently the fact if the title were not retained, but a like lien for the purchase money was retained; and no matter whether recorded or not in Wisconsin could not effect a levy or sale of the property in Mississippi.

What a puerile and useless thing it would be to record the contract in reference to the sale of the property in Wisconsin when the property had already gone to Mississippi! When the property arrived in Mississippi there was no necessity for recording the sale contract in Mississippi because the Mississippi law provided by numerous decisions in the supreme court of Mississippi that it was not necessary to record such a contract in Mississippi, and under Code of 1906, section 4777, goods and chattels might be retained in possession for as much as three years without demand made before it was necessary for the recordation of retention contract. *Burk-*

*halter* v. *Mitchell,* 107 Miss. 92, 64 So. 967.; *Ross-Meehan* v. *Pascagoula,* 72 Miss. 608; *Hunter* v. *Crook,* 93 Miss. 812; *Moseby* v. *Williams,* 5 How. 520; *McKee* v. *Mitchell,* 68 So. 468.

The question of recordation of the contract, as above stated, is only for the protection of the parties in the state where the property involved is situated. The fact that the parties to the contract stated that the contract should be governed by the laws of Wisconsin does not mean that the recordation of the contract could be governed by the laws of Wisconsin. This is an entirely different situation. The contract itself is governed by the laws of Wisconsin, but recordation and the title of the property is governed by the laws of the state where the property is situated when sold or levied upon.

II.    *Waiver of retention of title by taking additional security.*    ''Where there is an express contract that the title be retained in the vendor, it is not waived by him by implication because he took the security of a deed of trust.    29 Ency. (2nd Ed.) note 2.    We have not been contravening this view.''    *Champenois* v. *Tinsley,* 42 So. 89, 90 Miss. 38.    See *Smith* v. *DeVaughan,* 82 Ga. 575, 98 S. E. 425.    It is evident that the intention of the parties is to govern.    What were the intentions of the parties in the present contract of sale?

The contract having provided that the customer will sign a chattel mortgage at the time of the shipment, it certainly makes the chattel mortgage a part of the contract. Now, referring to the chattel mortgage, the original of which is submitted to this court by agreement of counsel, it will be seen that there is not one single allegation or statement made in the chattel mortgage which contradicts, voids, sets aside, changes, or is contrary in any way to the original contract of purchase. It is evident that the title to the property should remain in the seller until the same was paid for.

"Where one made a conditional sale of goods, his subsequent acceptance of a mortgage on them and other goods does not constitute an election to claim under the mortgage, to the exclusion of his rights under the sale." *First Nat'l Bank* v. *Reid*, 98 N. W. 107, 122 Iowa 280; *Rock Island Plow Co.* v. *Same, id.; Gale Mfg. Co.* v. *Same, id.* See, also, *Goodkind* v. *Gilliam*, 48 Pac. 548, 19 Mont. 385; *Owensby* v. *Swann*, 59 S. W. 378; 17 Am. Digest (Decennial Ed.) page 477; *Pierce* v. *Hutchens, Trustee*, 205 U. S. 340, 51 L. Ed. 828; *Baily* v. *Baker Ice Machine Co.*, 60 L. Ed. 284.

There can be no inequity in this situation. It is admitted that the goods were sold by the appellant here to A. V. Wills & Sons and that there is a balance due exceeding ten thousand dollars. The appellants have secured judgment against A. V. Wills & Son, who in the meantime have gone into bankruptcy, and it is simply a question of whether the legal and equitable rights are in the appellant or appellee.

There is no question of fraud, no question of bad faith, and we think on the whole, that the property being located in Mississippi must be governed by the laws of the state of Mississippi. Finally, it is a question of fact as to whether or not these parties meant by taking the mortgage back to secure the notes to waive their retention of title.

"These are questions which must be left for the trial court to determine after having heard the evidence." *Keane* v. *Kibble*, 28 Idaho 274, 154 Pac. 972; *Rockwell* v. *Humphrey*, 57 Wis. 410, 15 N. W. 394; *Aultman* v. *Silha*, 55 N. W. 711; *Bailey* v. *Baker Ice Machine Co.*, 239 U. S. 268, — Sup. Ct. 50, 61 L. Ed. 265.

We, therefore, submit that the judgment of the lower court in both these cases should be affirmed.

Argued orally by *Sam C. Cook*, for appellants, and *Gerald FitzGerald*, for appellee.

ANDERSON, J., delivered the opinion of the court.

These cases were consolidated and tried together by agreement of the parties. The appellants and appellee were creditors of A. V. Wills & Sons. The latter had a dredging outfit in Coahoma county in this state. A. V. Wills & Sons were adjudged bankrupts under the federal bankruptcy statute (U. S. Comp. St., sections 9585-9656). The appellants claimed liens by attachment and levy on the dredging machinery, while the appellee claimd title to the dredging machinery under a conditional sale contract between it and A. V. Wills & Sons. The question was as to the priority of right as between appellants and appellee. A trial was had on agreed facts between the parties; the court sitting as judge and jury. The stipulated facts were embodied in writing and made a part of the record. The court rendered judgments for appellee, from which the appellants prosecuted appeals.

The following is deemed to be a sufficient statement of the case out of which the questions for decision arise. Appellants sued out foreign attachments against A. V. Wills & Sons in the circuit court of Coahoma county to enforce payment of their indebtedness against the latter. Writs of attachment were issued and levied upon the dredging machinery involved. These attachment suits were prosecuted to final judgment which provided for a sale of the property attached. In the meantime A. V. Wills & Sons were adjudicated bankrupts under the federal bankruptcy statute, and T. J. Canavan was appointed trustee in bankruptcy, and was substituted in the attachment suits in the place of A. V. Wills & Sons, in order to protect the interest of the bankrupt estate. Writs of execution were issued on the judgments in attachment, directed to the sheriff of Coahoma county, commanding him to sell the property—the dredging machinery—to satisfy the judgments. Thereupon the appellee interposed a claimant's affidavit, setting up that

it was the owner of the dredging machinery by virtue of
a conditional sale contract entered into between appel-
lee and A. V. Wills & Sons for the sale and purchase of
the machinery. The claimant's issue was thereupon
tendered and joined between the parties.

The dredging machinery was sold by appellee to A.
V. Wills & Sons, in the state of Wisconsin, to be shipped
to Coahoma county in this state. The contract of sale
was in writing and was made a part of the agreed facts.
The dredging machinery was delivered to the carrier in
the state of Wisconsin for delivery to A. V. Wills & Sons,
at Clarksdale, in this state. A part of the purchase price
was paid by A. V. Wills & Sons, and the balance was
evidenced by notes executed by them, which notes were
payable in the state of Missouri. The pertinent part of
the contract provided, in substance, that the title to the
property sold was retained in appellee, the seller, until
the purchase-money notes were paid, which notes were
to be secured by a chattel mortgage on the dredging ma-
chinery; that the purchase-money notes should be re-
garded as evidences of indebtedness, and not as pay-
ments, "whether postponed to maturity of the original
obligation or not;" that the property sold should retain
its character as personal property; that the contract of
sale should be treated as a Wisconsin contract, and the
rights of the parties governed by the laws of Wisconsin
existing at the time of making the contract. The con-
tract was neither recorded in Wisconsin nor in Missis-
sippi where the dredging machinery was located when
appellants sued out and had their attachments levied
thereon. At the time appellants acquired their attach-
ment liens they had no notice of the existence of the con-
ditional sale contract. Neither it nor the chattel mort-
gage executed in pursuance of the conditional sale con-
tract had been recorded in this state, nor did appellants
have any notice of the mortgage. The appellants con-
tended that they were *bona-fide* lienors against the ma-
chinery without notice of the rights of the appellee, while

the appellee contended that it was the owner of the property by virtue of its conditional sale contract.

. Section 122.05, chapter 122, of the Wisconsin Uniform Conditional Sales Act (Wisconsin Statute 1925), provides, in substance, that a conditional sale of personal property, reserving title to the property in the seller, shall be void as to purchasers and creditors from the buyer, who, without notice of such contract, purchases the goods, or acquires, by attachment or levy, a lien thereon, unless the conditional sale contract shall be filed and recorded within ten days after the making thereof, as provided by the statute. Under our statute (section 4777, Code of 1906 [section 3121, Hemingway's Code]) such a sale is valid without recording, as against all persons dealing with the property sold, for a period of three years from the time possession is taken by the purchaser. Therefore it will be observed that, if the recording laws of Wisconsin applicable to such contracts are to govern the rights of the parties to this cause, the appellants' liens on the machinery by attachment will prevail over appellee's reservation of title thereto. The question, therefore, is which law applies, that of Wisconsin, or that of this state?

Questions arising under the conflict of laws are often fraught with much difficulty. However, as we view this case, there appears to be little, if any, difficulty in solving the rights of the parties. For the present we shall leave out of view the effect of the stipulation in the conditional sale contract that the rights of the parties shall be governed by the laws of Wisconsin, where the contract was made. In discussing this question, we do not think we could do better than adopt what Minor in his Conflict of Laws (section 130, pp. 301 and 302) says:

"At common law, a reservation of title in the vendor of a chattel until the purchase price is paid is sustained even as against a. purchaser from the vendee for value and without notice of such reservation. But in many states, by statute, the reservation is void as against third

persons unless it is recorded. If, therefore, we suppose a chattel sold with such reservation in one state, while the chattel is actually situated in another state subject to a different law, or is subsequently removed thither by the vendee, where it is afterwards sold by the vendee to a purchaser for value and without notice of the reservation, which law is to govern the title of the vendee's purchaser? The policy of the laws which set at naught the contract for the reservation of the title in favor of creditors of and purchasers from the vendee must be kept in mind in the solution of this question. Some avoid the reservation of title absolutely as against such creditors and purchasers (*Marvin Safe Co.* v. *Norton,* 48 N. J. Law, 412, 7 A. 418, 57 Am. Rep. 566), while others avoid it as to such third persons, unless the reservation is in writing and recorded. *Public Parks Amusement Co.* v. *Embree-McLean Co.,* 64 Ark. 29, 40 S. W. 582. The purpose of these laws is to protect persons *within the state* where they are in force in advancing money to the vendee on the faith of an apparently complete title which is in reality defective, or in their purchasing the chattel from the vendee upon the faith of his title. It is not the purpose of such a law to protect third persons dealing with the property beyond the limits of the state, for, with respect to such dealings, that state has no authority to legislate. On the other hand, it would seem to be the policy of these laws to embrace all dealings by third persons with the property situated within the limits of their authority, regardless of the law of the place where the vendee obtained the property and regardless of the question whether or not by that law the reservation of title in the vendor is valid as against third persons. Thus it will be seen that the real scope of these laws when they exist in a particular state is to embrace all personalty *within that state,* whether the vendor's reservation of title was created there or elsewhere; and they *do not apply* to personalty elsewhere, or to dealings therewith elsewhere by third parties, even though the

original sale and reservation of title took place in the former state.

"It follows from what has been said and from the policy of these laws invalidating reservations of title in the vendor as against creditors of and purchasers from the vendee that it is usually the law of the state where the purchaser buys from the vendee, or where his creditors seek to subject his interest that will determine the validity of the vendor's reservation of title; the law of the place of the vendor's contract of sale being immaterial. And this is true whether the chattel sold is situated at the time of the transfer in, or is subsequently removed by the vendee into, the state where the subsequent dealings occur. Ordinarily, therefore, in such cases, it is safe to follow the rule that the law of the place *where the subsequent dealings occur will govern.* Thus, in *Hervey* v. *Locomotive Works,* 93 U. S. 664, 23 L. Ed. 1003 (citing in connection therewith *Marvin Safe Co.* v. *Norton, supra; Weinstein* v. *Freyer,* 93 Ala. 257, 9 So. 285, 12 L. R. A. 700; *Public Parks Amusement Co.* v. *Carriage Co.,* 64 Ark. 29, 40 S. W. 582; *The Marina* [D. C.], 19 F. 760), a Rhode Island company delivered a locomotive in Rhode Island to a contractor on a railroad in Illinois, reserving the title until the payment of the price. By the law of Rhode Island, the reservation of title was valid as against subsequent creditors of the vendee. By the law of Illinois, it was invalid as against them until recorded. The engine was attached in Illinois by subsequent creditors of the vendee, and sold to Hervey. In a contest between Hervey and the vendor, it was held that the law of Illinois must govern. Here the reservation of title was valid by the *lex loci contractus,* but invalid by the law of the place where the subsequent dealings therewith were had. On the other hand, in *Weinstein* v. *Freyer, supra,* the circumstances were just reversed, but the same law was held to govern. In that case, the vendor sold the vendee a piano in Georgia, reserving title. By the law of Georgia, such a reservation

was invalid as to purchasers from the vendee, unless recorded. In this case there was no recordation. Then the vendee removed the chattel to Alabama, and there sold it to a *bona-fide* purchaser. The common law prevailing in Alabama held such reservation valid without recordation. It was held that the rights of the vendee's purchaser were to be determined by the law of Alabama.''

It will be observed from the author's discussion of the question, and the authorities cited in support of his position, that the recording laws of a state only embrace personal property within that state; that they affect only the rights of persons dealing with property situated in that state, and have no extra-territorial effect when property is taken into another state. There seems to be no cases to the contrary.

Does the fact that in the conditional sale contract it was stipulated that the rights of the parties thereto were to be governed by the laws of the state of Wisconsin take this case out of the general rule that the recording laws of a state can have no extra-territorial effect? We think not. The dredging machinery was bought in Wisconsin with the understanding between the appellee, the seller, and the purchasers, A. V. Wills & Sons, that it be immediately shipped into and located and used in this state. The conditional sale contract was not recorded in Wisconsin because it would have been useless so to do. The property was leaving that state at once for another state, where it would be located and used. Under the Uniform Conditional Sales Act (section 122.05, chapter 122, Wisconsin Statutes 1925), the conditional sale contract involved was valid as between the appellee, the seller, and the purchasers of the dredging machinery, A. V. Wills & Sons. The recording laws of Wisconsin had nothing to do with the validity of the contract as between the seller and the purchasers. They only undertake to protect the rights of *bona-fide* purchasers and incumbrancers of the property without notice by requiring such contracts to be recorded.

Under the laws of this state, it has been held, in numerous decisions by this court, that such contracts are not only valid. as between the seller and purchaser, but as against all other persons dealing with the property sold for a period of three years from the time possession of the property is taken. Therefore, under the laws of both Wisconsin and this state, the conditional sale contract was valid between the appellee and the purchaser of the machinery. The effect of appellants' position is that the stipulation in the conditional sale contract that the rights of the parties thereto should be governed by the laws of Wisconsin would be to transplant the applicable recording laws of the state of Wisconsin into the state of Mississippi along with the dredging machinery brought into this state. Recording laws are not intended for the benefit of the parties to the recordable contract as between each other. Such laws are enacted for the protection of the rights of the parties to the contract on the one hand and of third persons on the other dealing with the subject-matter of the contract as between each other. This is not a contest between appellee, the seller of the machinery, and A. V. Wills & Sons, the purchasers of the machinery. As shown above, under the laws of both Wisconsin and this state, the reservation of title to the machinery was good as between the parties. It is a contest between appellee, the seller of the machinery, and appellants, third persons dealing with the machinery after it reached this state. The stipulation in the conditional sale contract in question has no application to that state of case. The parties to the contract were powerless to provide for the application to the contract of the recording laws of Wisconsin in this state, so as to affect the rights of third persons dealing with the machinery after it reached this state. Neither by contract nor comity could the recording laws of Wisconsin be brought into and enforced in this state in this case.

Appellants contend that, by the taking of a mortgage on the dredging machinery to secure the purchase-money

notes, appellee waived its right under the retained title provision of the contract of sale. Among other provisions, the contract of sale contained the following:

"Any notes which may be executed and delivered by the buyers to the seller shall be regarded as evidence of indebtedness only, and not as payments, whether post-. poning maturity of the original obligation or not. The property herein described, until fully paid for, shall retain its character as personal or chattel property, under all circumstances wherever placed, and whether attached to real estate or not. Any parts, equipment, repairs, or replacements of any kind placed upon or made to said property by the buyers or others should be deemed to be a part of said property, and become the property of the seller."

Appellants also contend that this question is governed by the laws of Wisconsin, although the mortgage was taken in Missouri, and the purchase-money notes were payable in a bank in St. Louis in that state. There is some diversity of opinion among the courts on this question, but we think the better reasoned authorities hold that, where the seller of personal property with reservation of title takes additional security for the price, such as a mortgage, either on the property sold or on that and other property, he does not render the reservation of title until the price is paid inoperative as a conditional sale. *Champenois* v. *Tinsley,* 90 Miss. 38, 42 So. 89; *Bierce* v. *Hutchins,* 205 U. S. 340, 27 S. Ct. 524, 51 L. Ed. 828; *Monitor Dredging Co.* v. *Mercer,* 163 F. 943; 90 C. C. A. 303, 20 L. R. A. (N. S.) 1065, 16 Ann. Cas. 214; *Baily* v. *Baker Ice Machine Co.,* 239 U. S. 271, 36 S. Ct. 50, 60 L. Ed. 275; *First Nat. Bank* v. *Reid,* 122 Iowa, 280, 98 N. W. 107; *Goodkind* v. *Gilliam,* 19 Mont. 385, 48 P. 548; *McDonald Auto Co.* v. *Bicknell,* 129 Tenn. 494, 167 S. W. 108, Ann. Cas. 1916A, 265; *Kimball* v. *Costa,* 76 Vt. 289, 56 A. 1009, 104 Am. St. Rep. 937, 1 Ann. Cas. 610; notes to 20 L. R. A. (N. S.) 1065. Neither the courts of Wisconsin nor Missouri have held to the contrary.

*Aultman & Co.* v. *Silha,* 85 Wis. 359, 55 N. W. 771, does not hold to the contrary. It is true the court held, under the particular facts of that case, that the taking of a mortgage by the seller of personal property with retention of title constituted a waiver by the seller of his rights, under the retention of title provisions of the contract, but the court was careful to say, in that case, that, although the courts of Wisconsin did not favor conditional sales, it was always a question whether the parties, under the particular facts of the case, intended the mortgage as a substitute for the conditional sale.

*Affirmed.*