OUBRE *v.* SKRMETTI.

In Banc. Dec. 13, 1948.

(37 So. (2d) 763)

Mize, Thompson & Mize and Jo Drake Arrington, for appellant.

546

**J. D. Stennis, Jr.** and **Carl Marshall** for appellee.

548

**McGehee, J.**

The question presented here for decision is whether or not the action of the trial court was erroneous in granting a directed verdict in favor of the defendant in replevin, Marko Skrmetti, at the close of the evidence offered on behalf of the plaintiff, Felide Oubre, Trustee in a deed of trust held by Paul, Rice & Levy, Inc., of New Orleans, Louisiana, which secured an indebtedness of the Marsalis Construction Company, a corporation, in the sum of $7,311.87, in favor of the said beneficiary.

The property described in the deed of trust consisted of four General Sherman Army Tractor Tanks, General Motors 225 H. P., Diesel Engines, U. S. A., then stored at Stanbro's garage, in the City of Gulfport, Mississippi, two of which are involved in this suit. All of the army tanks were without guns and otherwise completely demilitarized. They had been purchased from the United States Government along with other surplus war material by the said Marsalis Construction Company, grantor in the said deed of trust, which bears the date of March 28, 1947, and was not filed for record at Gulfport, in Harrison County, Mississippi, until April 15, 1947.

In the meantime, according to the testimony of the defendant, Marko Skrmetti, who was introduced by the plaintiff as an adverse party and witness, the two tanks in question were sold on April 2, 1947, to said defendant in the City of Gulfport, by William I. Marsalis, the president of the Marsalis Construction Company, which was a

foreign corporation having and maintaining an office at Gulfport, where the said president of the corporation was its sole representative in this state. This witness further testified that he paid the sum of $2,000, in currency, as the cash purchase price of the property, without notice of the existence of the deed of trust thereon.

Section 870, Code of 1942, provides, among other things, that "Mortgages, deeds of trust, and other liens on personal property executed out of this state shall only be binding upon such property in or when removed into this state, as against creditors and bona fide purchasers without notice, from the time such mortgage, deed of trust, or other instrument, . . ., shall be delivered to the proper clerk in this state for record."

The proof on behalf of the plaintiff discloses that the deed of trust was executed at New Orleans, Louisiana, on property then stored in Stanbro's Garage at Gulfport, Mississippi, as aforesaid, which place had been leased to the Marsalis Construction Company at a rental of $150 per month for a period of six months for the storing of said tanks and other surplus war material belonging to said corporation. That pursuant to the articles of incorporation and by-laws of the company, it had established and was maintaining its principal business office at Gulfport, although the home office was at Wilmington, Delaware, and the president of the company, who was one of the only three directors, was in charge of the said Gulfport office. That under the by-laws it was provided that "The president shall be the chief executive officer of the corporation. It shall be his duty . . .; to have general and active management of the business of the corporation; . . ." The other two directors of the corporation were A. R. St. Philip and George W. Rappleyea, of New Orleans, Louisiana, the former being the vice-president, and the latter, secretary and treasurer.

The deed of trust in question was executed in the name of the corporation by its said secretary and treasurer with the consent of the vice-president, but without previ-

ous notice to the president of the special meeting at which its execution was authorized, although the by-laws of the company provide that the ''special meetings may be called by the president on two days' notice in writing or on one day's notice by telegraph to each director, and shall be called by the president in like manner on the written request of two directors.''

It is, therefore, urged by the appellee Skrmetti, defendant in replevin, that the deed of trust was not properly authorized and is invalid, and that the same was not subject to recordation in Mississippi because of an alleged defective acknowledgment before the notary at New Orleans. However, the proof disclosed that George W. Rappleyea owned all the paid-for stock in the corporation at the time he executed the deed of trust on its behalf, and we shall assume for the purposes of this decision, and for that purpose alone, that the conveyance was duly authorized and validly executed; and also that the acknowledgment was such as to entitle it to a recordation in this state, in view of the fact that at any rate it was not recorded until April 15, 1947, so as to become binding on the personal property purchased in this state by the defendant in replevin, within the meaning of the said Section 870, Code of 1942, supra, provided the defendant was a bona fide purchaser of the tanks for value within the meaning of the said statute, without notice of the lien of said deed of trust.

As heretofore stated, the plaintiff introduced the defendant in replevin, Marko Skrmetti, as an adverse party and witness under Section 1710, Code of 1942, with the right thereunder to contradict the testimony of such party and witness, and he testified, in substance, but without contradiction, that he learned through one Mr. Blue, an officer of the City of Gulfport, that the said army tanks were for sale and could be purchased from William I. Marsalis, the president of the Marsalis Construction Company; that he went to Stanbro's Garage, where the tanks were stored, and that he examined them and found

that they "were not fit for marine purposes (since he wanted them for his boats) unless there had been lots of changing, and that he would have to get new bases (for the Diesel Engines), and that a mechanic would cost lots of money." And the record shows that he made this statement in answer to the following question: "When you say that you were running a risk, what do you mean by that?"

The defendant further testified, in substance, that he knew that the Marsalis Construction Company had the garage under lease, and that Mr. Stanbro "told me that Mr. Marsalis was president of the Company, and he had all of the say-so"; that after he saw the tanks he went to the hotel where he was introduced by Mr. Blue to Mr. Marsalis; that it "was in the morning, and I was on my way to Franklin (La.)"; that he went to Franklin, and came back that night; that while at the hotel, Mr. Marsalis, whom he had not seen before, "told me that he was the president of the company, and I bought these tanks on his authority"; that he talked to Marsalis about twenty minutes, and paid him $1,000 each, in currency, for the tanks, received a bill of sale therefor, which the seller failed to date, and that he was in a hurry to get to Franklin; that "Marsalis told me he had a right to sell them, that he was the president and this other man came to see me afterwards (meaning Mr. Rappleyea who came to see him two or three weeks later, and whom he had never seen nor heard of before)".

After having testified "I just bought the tanks and paid him for them, and he told me he was president", the witness further said, "He told me that he owned them, and they were his, and he had full charge of them, and the man where they were stored told me it was Marsalis." On the basis of this latter statement, it is contended by the appellant that the defendant, Skrmetti, purchased the tanks from Marsalis as an individual, and not from the corporation. But since the testimony of the witness as a whole discloses that he was an uneducated man, we think

that it is clear that his testimony, when viewed in its entirety, shows that he understood that he was purchasing the tanks from Mr. Marsalis as president of the Marsalis Construction Company.

At any rate, ██ ██ he handed the bill of sale to counsel for the plaintiff while on the witness stand, at the latter's request, and he was not asked to make the same an exhibit to his testimony, and it was not introduced in evidence. The instrument would have, of course, disclosed whether or not it was executed in the name of the Marsalis Construction Company, and, since the burden of proof was upon the plaintiff to show that the defendant purchased these assets of the corporation from Marsalis as an individual, if that contention was to be relied upon, and in view of the fact that the instrument was before the court at the trial, we shall assume that it was executed in the name of the corporation, since the latter admittedly owned the tanks at that time.

It may be conceded that it was an unusual circumstance that the defendant would have paid for these tanks in currency in the room of Marsalis at the hotel, instead of by check, but the fact is he evidently did pay for them in some manner or they would not have been delivered to him by the seller; and it was not shown that he paid for them otherwise than in the manner stated. Then, too, when it is considered that the witness was en route to Franklin, Louisiana to return to Biloxi on the same day, it is a reasonable inference that Marsalis would not have left his hotel for the office prior to the time the defendant was passing through Gulfport on that morning from his home at Biloxi en route to Franklin, Louisiana. And for aught that appears from the record, it cannot be said that in paying for the tanks in currency, this was, in the language of the noted Henry Ward Beecher, not the ''habit'' of mind and manner of dealing with men and things'' customarily adherred to by the defendent in the transaction of his business. ██ ██

At any rate, since his testimony was wholly undisputed,

we are of the opinion that the trial court would not have been justified in permitting the jury to say that he did not pay for the tanks in the manner testified to by him; and this is especially true in view of the fact that the tanks were delivered to him and it is not shown that he paid for them in any other manner.

Moreover, Mr. Rappleyea, sole owner of the corporate stock, had been informed, prior to the execution of the deed of trust, and therefore several days before the purchase by the defendant, that Marsalis was undertaking to sell and dispose of all the tanks and collect the cash therefor, the proceeds of the sale to be divided between himself, St. Philip, and one Ethlee, and he testified that this "put me on notice, and I had already promised Paul, Rice & Levy this mortgage and note, and I went back and executed the note and the mortgage." He further testified that he came to Gulfport on the following day, told Marsalis of what he had been informed, and that the mortgage had been executed on the tanks in question; that he also informed Mr. Stanbro, the garage owner, about the mortgage on that same date; that the latter requested a written notice in that behelf, and evidently to better safeguard the interest of the owner or lienor; and that he went to the attorneys for Paul, Rice & Levy and "asked them to send him (Stanbro) a telegram that the tanks were mortgaged." This alleged notice was given by them to Marsalis and to Stanbro on March 29, 1947, following the execution of the deed of trust on the day before, and yet the witness, Rappleyea, does not claim to have suggested to Paul, Rice & Levy, or its attorneys, that the deed of trust be promptly filed for record at Gulfport, Mississippi, although he says he executed the same in an effort to protect the interest of said beneficiary and at a time when he knew, according to his own testimony as sole stockholder in the corporation, that Marsalis was endeavoring to sell the tanks in question. The record is silent as to whether Marsalis either admitted or denied to Rappleyea that he was

trying to sell this property. At any rate, Rappleyea, as secretary and treasurer and sole owner of the corporate stock, permitted the president to remain in charge at Gulfport and paid his salary for a time thereafter served as such officer.

Neither Marsalis, Blue, nor Stanbro was offered as a witness, but it was shown that Marsalis was unavailable. If Stanbro was informed of the deed of trust held by Paul, Rice & Levy on the tanks the next day after its execution, he failed to inform the defendant, Skrmetti, of such fact, when four days later he told the latter "that Mr. Marsalis was president of the company, and he had all of the say-so." It is true that Stanbro, who is not shown to have had any connection with the company, was under no legal obligation to inform the defendant of the deed of trust.

Of course, whatever was said by either Blue or Stanbro to the defendant was not binding upon the plaintiff as to the authority of Marsalis to make the sale, but it has material bearing upon the alleger good faith of the defendant, Skrmetti, in his purchase of the property in question.

It appears that two landing ships and certain other supplies war material in possession of the Marsalis Construction Company had been seized by the federal authorities upon the theory that they were about to be disposed of in other countries in violation of some federal law. The seizure occurred about the first of March, 1947 before the four army tanks arrived at Gulfport, on the 17th or 21st of that month.

The witness, Rappleyea, testified that he intended to lease these tanks to timber operators in British Honduras for hauling timber to the sawmills there, and that his company was to receive $1.50 per thousand feet of timber for their use. However, the defendant, Skrmetti, is not shown to have known anything about the intentions of this corporation, and had the right to assume, in the absence of notice to the contrary, that its chief

executive officer and only representative in this state had authority to dispose of the same for the reason that the company was engaged in no business at Gulfport or elsewhere in this state wherein the tanks were to be used. Apparently, they had been purchased for resale, so far as Skrmetti was advised.

We are, therefore, of the opinion that there was not sufficient conflict in the evidence to warrant the trial court to submit the question to the jury of whether or not the defendant, Skrmetti, was a bonafide purchaser for value of the property without notice of the deed of trust within the meaning of the said Section 870, Code of 1942, and that the case should therefore be affirmed.

Affirmed.