MEMPHIS BANK & TRUST COMPANY *v.* BLOUNT

No. 43410          March 15, 1965          172 So. 2d 778

*Paul M. Moore,* Calhoun City; *Armis E. Hawkins,* Houston, for appellant.

*W. W. Brown,* Calhoun City; *Jesse L. Yancy, Jr.,* Bruce, for appellee.

BRADY, TOM P., J.

The appellant, plaintiff below, filed a replevin suit in the Circuit Court of Calhoun County against the appellee, Eli Blount, for the recovery of a Ford automobile. From a verdict of the jury and judgment of the circuit court in favor of the appellee, the appellant appeals to this Court. The significant facts are as follows:

On March 14, 1958 one Aubrey Sanders, a resident of Batesville, Panola County, Mississippi, who is owner and operator of Buddy's Gulf Service Station in that city, entered into negotiations with a Robert Smith, an automobile salesman for Oakley Motor Company, a vendor of Ford automobiles, for the purchase of a used automobile. Aubrey Sanders went to Memphis on March 14, 1958, where he contacted Robert Smith and selected a used 1957 Fairlane Victoria two door Ford automobile. On March 14, 1958 Sanders executed what is commonly known as a purchaser's statement which, in substance, is a credit statement, together with credit references.

On the same date he also executed another instrument, known and styled as ''A Retail Buyer's Order,'' which in substance specifies the car in question, giving make, model, type and serial number, together with

the accessories. The retail buyer's order shows the car to have a deferred balance due on it of $2,242.20, payable in thirty equal consecutive monthly payments of $84.74, with the first of said payments being due on April 15, 1958. The record shows that, the appellant bank having closed, a sale could not be consummated on March 14 and that Oakley Motor Company's salesman, Robert Smith, loaned Aubrey Sanders an automobile, in which Sanders returned to Batesville, Mississippi.

On March 15 the Memphis Bank and Trust Company approved the proposed sale to Aubrey Sanders, after reviewing the purchaser's statement and retail buyer's order, and on March 15, subsequent to the approval, Robert Smith drove the car to be purchased by Aubrey Sanders to Batesville, Mississippi and delivered it to Aubrey Sanders and returned in the automobile he had loaned to Sanders.

It is the contention of the appellant that the conditional sales contract was signed on March 15 by Aubrey Sanders and the sum of $3,000 cash was paid to Smith, leaving a balance of $2,242.20 due and owing. On March 15, after Smith had returned the conditional sales contract which Sanders had signed, Edward Myers, the manager of Oakley Motor Company of Memphis, executed and assigned the conditional sales contract to the appellant.

On March 23 or 24, some eight or nine days later, Aubrey Sanders sold the automobile to the appellee, Eli Blount, who resides in Calhoun County, Mississippi. Subsequent to the sale, however, Aubrey Sanders continued to make payments under the conditional sales contract for some seven months, through the month of October, 1958. Subsequent to October, 1958 there was a default, and thereafter no additional payments have been made.

Ultimately the appellant discovered the automobile to be in the possession of the appellee and instituted suit

in replevin for recovery of the automobile. It is the contention of the appellant that the conditional sales contract was executed and the automobile purchased in Batesville, Panola County, Mississippi. The appellee, on the other hand, contends that the conditional sales contract was executed in Memphis, Tennessee and the car purchased there.

■■■ There is sufficient meritorious conflict in the testimony of the witnesses as to whether or not the conditional sales contract was executed in Memphis or in Batesville, to justify submission of this issue to the jury. Therefore, appellant's assignments of error on this point are not well taken.

■■■ The jury by its verdict in effect decided that the contract was made in Tennessee. Under the numerous decisions of this Court the law of the state of Tennessee must therefore determine the interpretation of the contract. However, this does not mean that no effect is to be given to the laws of this state. The action in replevin was instituted in this state against a citizen of this state and, if there are any Mississippi laws drawn in such a manner as to reach such a situation as this, they must be given full effect. Mississippi Code Annotated section 870 (1956) states that:

> Mortgages, deeds of trust, and other liens on personal property executed out of this state shall only be binding on such property in or when removed into this state, as against creditors and bona fide purchasers without notice, from the time such mortgage, deed of trust, or other instrument, duly acknowledged or proved, or a duly certified copy of the record thereof, shall be delivered to the proper clerk in this state for record.

This statute is clearly intended to reach security devices in the nature of liens on personal property executed outside of this state, and protects bona fide purchasers without notice of such property when the security device is not recorded as required by this statute. Therefore,

the sole question to be determined is whether a conditional sales contract executed in Tennessee is treated by the law of Tennessee in such a manner as to fall within the grouping of "other liens on personal property" as that phrase is used in section 870. In other words, if Tennessee would construe this conditional sales contract as being essentially a lien on personal property, then it is necessary that the conditional sales contract be recorded in Mississippi as required by section 870.

Tennessee Code Annotated section 59-326 (1955) states that:

> No conditional sales contract, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession entered into after March 1, 1951, shall be valid against the creditors of an owner or subsequent purchasers or encumbrancers until the requirements of this section and § 59-327 have been complied with, unless such creditor, purchaser, or encumbrancer has actual notice of the prior lien. [Acts 1951, ch. 70, § 68 (Williams, § 5538.168).]

It is to be noted that this statute, which deals directly with the type of conditional sales contract which we are considering in the case at bar, refers to and groups together conditional sales contracts, chattel mortgages, and other liens and encumbrances, as being in the category of a "prior lien." Furthermore, section 59-327 immediately following the above statute states that: "Such filing and the notation of the lien or encumbrance upon the certificate of title as provided in chapters 1 through 6 of this title shall constitute constructive notice of all liens and encumbrances against the vehicle described . . . ."

Throughout the relevant chapters of the Tennessee Motor Vehicle Code, conditional sales contracts, chattel mortgages, and other liens are grouped together under the term "lien." However, it is to be noted that the

requirement that a conditional sales contract be recorded is a part of the Motor Vehicle Code and refers to automobiles only, there being no requirement that conditional sales contracts for the sale of chattels other than automobiles be recorded.

Professor Paul J. Hartman, writing in 8 Vanderbilt Law Review 984 at 988 (1955), referring to conditional sales not under the Motor Vehicle Code, says:

> Tennessee, unfortunately, has no statute requiring conditional sales to be recorded in order to be valid against third parties, although she does have such a statute governing chattel mortgages.

Therefore, it would appear that in the case of chattels dealing with personal property other than motor vehicles, Tennessee draws a sharp distinction between the retention of title type of security device known as a conditional sales contract and a chattel mortgage, requiring the latter only to be recorded to protect against third party purchasers. However, it is evident that when the Tennessee legislature passed a new motor vehicle code they intended that title retention type security devices, such as conditional sales contracts, chattel mortgages, and other security devices be treated as being in the same *genre, i. e.,* as different types of liens which must be recorded to protect against innocent third party purchasers without notice.

██ ■ Since our investigation shows that Tennessee would construe a conditional sales contract for the sale of a motor vehicle as being essentially a lien which must be recorded, it is therefore evident that this conditional sales contract must come within the grouping of "other liens on personal property executed out of this state" as that phrase is used in section 870 of the Mississippi Code.

Our former decisions, though it may appear otherwise, are not in conflict with this opinion. A careful review of the Mississippi decisions which have any bearing on the issues at bar reveals that the cases fall

into three categories. The first category consists of two cases which construe foreign conditional sales contracts, but which wholly fail to consider section 870. U.S.F. & G. v. Northwest Eng'r Co., 146 Miss. 476, 111 So. 846 (1927); Harrison v. Broadway Motor Co., 128 Miss. 766, 91 So. 453 (1922). These two cases would be very much in point had they considered the section of the Mississippi Code which then corresponded to section 870.

The second category consists of numerous cases which consider section 870 but do not concern conditional sales contracts. Associates Discount Corp. v. Clark, 240 Miss. 723, 128 So. 2d 535 (1961); Oubre v. Skrmetti, 204 Miss. 542, 37 So. 2d 763 (1948); Russum v. Gans, 190 Miss. 585, 1 So. 2d 235 (1941); Vines v. Sparks, 148 Miss. 219, 114 So. 322 (1927).

The third category consists of two cases which are directly in point, in that they deal with foreign conditional sales contracts and the operation of section 870. Mid-Continent Finance Corp. v. Grant, 213 Miss. 789, 58 So. 2d 1 (1952); Patterson v. Universal Credit Corp., 204 Miss. 268, 37 So. 2d 306 (1948).

In the Patterson case an Alabama conditional sales contract was held to be a lien within section 870 because Alabama law, which was controlling, interpreted such contracts to be liens.

In the Mid-Continent case this Court stated that ''the sole question presented is, was the conditional sales contract a lien under the laws of the State of Tennessee within the meaning of Section 870 . . . .'' In that case there are two minor difficulties which merit consideration. First, in deciding the case this Court reached the proper conclusion of law, but failed to take into consideration the fact that the present Tennessee Motor Vehicle ·Code was in force and effect at the time. The second minor difficulty is that while the legal rule followed in the Mid-Continent case was essentially the same as that in the Patterson case, an opposite result was

reached. This result does not change the rule of law of the Patterson case, but rather reinforces it and simply illustrates more vividly the point that whether or not section 870 applies to a foreign conditional sale will depend upon how the foreign jurisdiction construes the contract. It follows therefore that both of these cases force the conclusion that section 870 reaches only such conditional sales contracts as the foreign jurisdiction construes to be in the nature of a lien rather than a title retention. See Professor Hector Currie's comments in 26 Miss. Law Journal 23 at 27 (1954). The case is therefore affirmed.

Affirmed.

*Kyle, P. J., and Ethridge, Rodgers and Inzer, JJ.,* concur.